### IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

**STEPHANIE BOWERING NOWLIN**
               **Petitioner/Plaintiff,**

      **Vs.**

**TAMALA KING, INDIVIDUALLY AND IN OFFICIAL CAPACITY OF PROBATION OFFICER OF MISSISSIPPI DEPARTMENT OF CORRECTIONS; AND RANKIN COUNTY, MISSISSIPPI**
             **Respondent/Defendant   )**

NO.  3:25-cv-662-DPJ-ASH

### COMPLAINT

### Jury Trial Demanded

### INTRODUCTION

1. This civil action arises from events that occurred on or about June of 2021, but the actions complained of were not discovered by Plaintiff until on or about October 2022. The claims asserted herein allege violations of 42 U.S. Code § 1983, the Fourth, Fifth, Sixth, Eighth, Nineth, and Fourteenth Amendment, alleging acts of Perjury, Defamation, Malicious Prosecution and Abuse of Power, to which the Plaintiff herein has suffered damages and to which the Defendants named herein are liable.

**JURISDICTION**

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331, and Section 1343. Also, the supplemental jurisdiction of this Court to hear claims arising under state law is invoked pursuant to 28 U.S.C. Section 1367. Venue in this Court is appropriate under 28 U.S.C. Section 1391(b) and Section 1392.

**PARTIES**

3. The plaintiff Stephanie Nowlin is an adult resident of Rankin County, Mississippi.

4. Defendant Tamala King, Individually, and in the Official Capacity of Rankin County, Mississippi Department of Corrections, Probation Field Officer, (hereinafter "Defendant King") is an adult resident citizen of the State of Mississippi and under the direction of the Mississippi Department of Corrections. Defendant King is a resident of Rankin County, State of Mississippi.

5. Defendant, Mississippi Department of Corrections, (hereafter Defendant MDOC) is a unit of local government in the State of Mississippi and can be served through its registered agent, Lynn Finch, Attorney General, State of Mississippi, Sillers Building, 550 High Street, Jackson, Mississippi 39205.

6. Defendant Rankin County, Mississippi, a unit of local government in the State of Mississippi, who may be served with process through the Rankin Chancery Court Clerk of Court and Clerk of the Board of Supervisors at 203 North St, Brandon, MS 39042.

7. Defendants, John and Jane Does 1-10 are corporations, entities, businesses, individuals and the like which are presently unknown to Plaintiff, but who are liable in this cause, and who are individuals the Plaintiff asserts are unable to be currently identified, despite diligent efforts. Said Defendants are named pursuant to M.R.C.P 9(h), insofar as their acts and/or

omissions were negligent and/or otherwise tortuous with respect to the injuries and damages to Plaintiff.

8. At all times and during all incidents relevant to this complaint, the defendants were acting under color of law.

9. Based on information and belief, the Defendant King was employed and under the direction and supervision of Defendant MDOC. If this information is later determined to be inaccurate, then Plaintiffs reserve the right to amend this Complaint to add the appropriate entity or person as a Defendant.

10. At all times relevant to this action, Defendant King was acting in the course and scope of her agency and employment with Defendant MDOC. Accordingly, Defendant MDOC is vicariously responsible for the acts and/or omissions of Defendant King pursuant to the doctrine of *respondeat superior*.

## FACTUAL ALLEGATIONS

11. On January 23, 2017, Plaintiff was convicted and sentenced by the Rankin County Circuit Court for Aggravated Driving Under the Influence and sentenced to a term of incarceration.

12. On July 25, 2019, Plaintiff was released from prison.

13. Plaintiff was ordered to serve a five-year term of probation under Miss. Code Ann. § 99-15-26.

14. Defendant King was Plaintiff's supervising probation officer.

15. Defendant King closed Plaintiff's probation on April 4th, 2022.

16. On June 14th, 2021, Defendant King had Plaintiff arrested, booked and strip-searched at the Rankin County Jail for an alleged probation violation.

17. At the time, Defendant King was employed as a probation field officer for Mississippi Department of Corrections (MDOC).

18. Defendant King arrested Plaintiff because she alleged that Plaintiff tested positive for fentanyl at a scheduled probation meeting.

19. However, the allegation, that Plaintiff tested positive for fentanyl, is false, and Defendant King knew the allegations were false.

20. On June 14, 2021, Plaintiff met Defendant King at her office and was instructed to take a drug test.

21. Defendant King insisted that she be in the stall with Plaintiff.

22. Defendant King then accused Plaintiff of using false urine.

23. Plaintiff was in the bathroom stall with Defendant King and was incapable of using false urine with Defendant King was standing within arm's reach of Plaintiff.

24. Defendant King instructed Plaintiff to another test.

25. Defendant King collected the test cup from Plaintiff and walked out of the room.

26. Minutes later, Defendant King walked back into the room empty handed and said that Plaintiff is being arrested.

27. Defendant King accused Plaintiff of failing the drug test for fentanyl.

28. Plaintiff asked Defendant King to show her proof that the test was positive.

29. Defendant King discarded the test before it was retested, failed to confirm the results using expert analysis and altogether failed to preserve the test evidence effectively eliminating any ability for Plaintiff to contest the false allegations against her.

30. Defendant King took Plaintiff to Rankin County Jail.

31. After Plaintiff's arrest, an alert was sent to Plaintiff's ex-husband to notify him that Plaintiff was arrested and held in Rankin County Sheriff's custody.

32. Plaintiff's ex-husband was contacted by Christy Snow, an employee of the Rankin County Sheriff's Department and told that Plaintiff had tested positive for fentanyl and taken into custody.

33. Defendant King communicated to others that Plaintiff tested positive for fentanyl, failed to notify Defendant King of her location, and violated probation, all of which caused further irreversible damage to Plaintiff reputation in the community and caused her to lose all contact and credibility with her family, friends, but most importantly, her children.

34. Immediately after, Plaintiff's ex-husband filed a restraining order in Chancery Court to suspend Plaintiff's contact and visitation with her two minor sons.

35. Plaintiff had been exercising standard visitation with her children.

36. After released from Rankin County, Amanda Spencer, the attorney for J.B. Bowering, called Plaintiff and told her to agree to a restraining order or go back to jail.

37. Out of fear, and without an attorney, Plaintiff signed the restraining order and lost contact with her children.

38. However, Plaintiff believed the restraining order was temporary and would be dropped because Plaintiff never consumed Fentanyl and always notified Defendant King of her location and residential location while under Defendant King's supervision.

39. Plaintiff believed that she would have an opportunity to contest the allegations against her, including the results of the positive drug test and believed that she would prove she had never violated any term of her probation.

40. Defendant King released Plaintiff from probation on or about April 4th, 2022.

41. Nothing was ever said about the alleged positive test from that point forward, until September 1, 2022.

42. On September 1, 2022, in Rankin County Chancery Court, Plaintiff and her ex-husband, J.B. Bowering went to court about the restraining order that Plaintiff had been pressured to sign by Amanda Spencer right after Defendant King arrested Plaintiff on June 14, 2021.

43. Plaintiff was seeking to have the restraining order dropped and visitation restored with her two children.

44. In that hearing, Defendant King testified as a witness for Plaintiff's ex-husband.

45. Defendant King proceeded to testify that Plaintiff violated the terms of her probation on June 14, 2021, when she tested positive for fentanyl and failed to notify Defendant King of her location and residential address changes.

46. Based largely on the Defendant King's testimony, the Rankin County Chancery Court Family Master, Keri Haralson Carroll denied Plaintiff's right to visit with her two minor children.

47. Plaintiff was ordered to comply with many unreasonable court-ordered conditions.

48. The Court ordered that Plaintiff pass multiple hair follicle and urine drug tests for six months before visitation could even be considered.

49. After six months, Plaintiff could pay a supervisor to supervise visitation between Plaintiff and her children.

50. The court attempted to appoint Christie Freeman, who is the sister of Plaintiff's ex-husband, the supervisor for visitation.

51. The Plaintiff will show that while on probation, Christi Freeman constantly harassed Plaintiff and the Court was aware of that harassment.

52. Also, the Court found Plaintiff in contempt and ordered her to pay her ex-husband's attorney's fees.

53. After testifying against Plaintiff, Defendant Tamala King was promoted to Deputy Superintendent/Warden for the Mississippi Department of Corrections.

54. On September 1, 2022, Plaintiff was hired by the Commissioner of the Mississippi Department of Corrections.

55. In that role, Plaintiff had access to inmates and probationers' files on MDOC's computer database.

56. Also, Plaintiff had direct access to top department officials.

57. Plaintiff had direct access to MDOC policy and procedure.

58. Plaintiff will show that Defendant King, while acting in her official capacity of probation field officer for Defendant, Mississippi Department of Corrections, falsified evidence and/or allowed another to falsify evidence to manufacture probable cause to illegally detain and arrest Plaintiff, in violation of the Fourth, Fifth, Sixth, Eighth, Nineth and Fourteenth Amendment.

59. Plaintiff can prove that on June 14, 2021, MDOC did not have a drug test for fentanyl.

60. Defendant King caused damage to Plaintiff's reputation and character when she testified in Chancery Court during Plaintiff's child custody proceeding and stated false facts about Plaintiff.

61. Defendants' actions as stated herein above demonstrate an unconscionable abuse of authority.

62. Plaintiff will present evidence that Defendant King's acts were part of an orchestrated attack on her credibility, character and trustworthiness.

63. Plaintiff will show that Defendant King's conduct is part of a course of conduct and a patterned practice that has become so pervasive within the with the ranks of Defendant MDOC and Defendant Rankin County, that the same has risen to the level of policy which the Defendants have condoned and encouraged.

64. Plaintiff was denied the presumption of innocence.

65. Plaintiff was denied the right to confront her accuser.

66. Plaintiff's request to inspect the drug test results were denied.

67. Plaintiff requested evidence that the test was confirmed by a certified laboratory, but the test was discarded in secret.

68. Plaintiff will show that despite the lack of evidence supporting the accusations against her that led to her arrest, Defendant King's testimony persuaded the Court, to deny Plaintiff request to restore visitation with her two children.

69. Plaintiff will show that the cost of the drug testing, the frequency of testing, the cost of supervisors and child support was all intended to be a financial hardship on Plaintiff.

70. Plaintiff has not been given any access to or contact with her children since June 15, 2021, despite Plaintiff being a successful, law-abiding citizen.

71. Had Plaintiff not been hired by Burl Cain, the Commission of MDOC as his government affairs coordinator, in September 2022, Plaintiff would never have discovered the evidence that proves the Defendants conspired with one another to deprive her of her constitutional rights.

72. Plaintiff will testify that as an MDOC government affairs coordinator, she accessed the MDOC Caseload database to view her file.

73. Plaintiff will present evidence that electronic data shows the date and time that Defendant King documented Plaintiff's change in address on two separate occasions, and each coincide with the date that Plaintiff notified Defendant King of her change of address.

74. Per MDOC policy, Defendant King was required to conduct home checks at Plaintiff's documented addresses, but she never did and then lied about it on the witness stand.

75. Further, Plaintiff can demonstrate to the Court that Defendant King lied to the Court about Plaintiff having failed the drug test.

76. Plaintiff will show that at the time of her arrest, MDOC did not use urine tests that tested specifically for fentanyl and that the purported positive test never existed. Plaintiff has demonstrative and testimonial evidence that supports this claim.

77. On information and belief, Defendant King manufactured a probation violation with others so that Plaintiff would be taken into custody and arrested, which would later be used as evidence that Plaintiff was a danger to her minor children.

78. Plaintiff brings this action against the named Defendants, pursuant to 42 U.S.C.A. § 1983, which states that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

### COUNT ONE

**VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT AND FOURTEENTH AMENDMENT RIGHTS BY DEFENDANT KING, DEFENDANT MDOC AND DEFENDANT RANKIN COUNTY**

79. The allegations contained in the preceding paragraphs are incorporated herein by reference verbatim.

80. The Fourth Amendment protects individuals from unreasonable searches and seizures and requires warrants based on probable cause.

81. The Fourteenth Amendment prohibits states from denying any person "life, liberty, or property, without due process of law" or "equal protection of the laws".

82. The Fourth Amendment is a safeguard against arbitrary actions by the government.

83. It requires law enforcement to have probable cause (a reasonable belief that a crime has been committed, or evidence will be found).

84. The core protection is against searches and seizures that are deemed unreasonable by the government.

85. Defendant King obtained an arrest warrant and arrested Plaintiff on June 14, 2021, based entirely on materially false statements and Defendant King knew the statements to be false and knew that the basis of her arrest was false.

86. Despite knowing the falsity of the arrest and the false allegations, Defendant King and Defendant Rankin County proceeded to detain, book and arrest Plaintiff in violation of Plaintiff's rights guaranteed by the Fourth, Fifth, and Fourteenth Amendment of the United States Constitution.

87. When Defendant King obtained the warrant, Defendant King intended to deprive Plaintiff of her constitutional rights for which she is liable to Plaintiff for damages.

88. Even worse, months later, after Plaintiff was released from probation by the Mississippi Department of Corrections, Defendant King continued to assert the false statements

about Plaintiff having tested positively for fentanyl and testified in the Chancery Court of Rankin County as a witness for Plaintiff's ex-husband, J.B. Bowering.

89. Defendant King lied under oath and perjured herself, when she testified that Plaintiff tested positive for fentanyl.

90. Defendant lied under oath when she testified that Defendant King did not know Plaintiff's residential address in Hinds County while on probation and under Defendant King's supervision as a field officer of MDOC.

91. Defendant King knew her statements to be materially and utterly false but continued to testify that a positive drug test was the underlying basis of Plaintiff's arrest on June 14, 2021.

92. Defendant Rankin County violated Plaintiff's constitutional rights when it called Plaintiff's friends and family to communicate the fact that Plaintiff had been arrested for fentanyl, which served as a basis for an emergency hearing in Chancery Court related to child custody and visitation of Plaintiff's two minor children.

93. As a direct and proximate result of Defendant King's materially false testimony and false arrest of Plaintiff, Plaintiff has suffered damages and Defendant King is liable for same.

94. As a direct and proximate result of Defendant King's materially false testimony and false arrest, Plaintiff has suffered damages to which Defendant King, Defendant MDOC and Defendant Rankin County are liable.

95. Plaintiff has been denied due process of law to which is guaranteed through the constitution.

96. Defendant King, Defendant Rankin County and Defendant MDOC are liable to Plaintiff for damages she has suffered because of the forgoing acts, including but not limited to:

    a. Violation of Plaintiff's constitutional rights

    b. Mental and emotional trauma

    c. Loss of enjoyment of life

    d. Loss of parental rights

    e. Punitive Damages

    f. All other damages recoverable under the laws of the State of Mississippi and United States Constitution.

## COUNT TWO

### Due Process:

97. The allegations contained in the preceding paragraphs are incorporated herein by reference verbatim.

98. The Fifth Amendment ensures that the government cannot take away a person's life, liberty, or property without due process.

99. Defendant King arrested Plaintiff for an alleged positive drug test on June 14, 2021.

100. Plaintiff will show that Defendant King did not confirm the drug test results by having an expert perform testing and analysis at a laboratory.

101. Defendant King did not preserve the urine for further testing.

102. Plaintiff never saw a positive result on the test, and Defendant King never attempted to show Plaintiff that the test was positive or what substances she had tested positive.

103. Then, Defendant King never proceeded to violate Plaintiff's probation.

104. Defendant King never violated Plaintiff's probation because Plaintiff did not test positive for fentanyl, nor did she fail to notify Defendant King of her residential address.

105. Defendant King never saw Plaintiff again while on probation.

106. Defendant released Plaintiff from probation, then testified as a witness for Plaintiff's ex-husband, J.B. Bowering, that Plaintiff violated probation, when she knew that to be false.

107. Defendant King's acts were part of an orchestrated attack on Plaintiff's credibility, character and trustworthiness.

108. Defendant King manufactured a probation violation so that Plaintiff would be taken into custody and arrested, which would later be used as evidence against Plaintiff.

109. Defendant King arrested Plaintiff for allegedly testing positive for fentanyl without having a test that could screen for fentanyl.

110. Plaintiff believed that she would have an opportunity to contest the allegations against her, including the results of the positive drug test and believed that she would prove she had never violated any term of her probation.

111. Because Defendant King discarded the test before it was retested, failed to confirm the results using expert analysis and altogether failed to preserve the test evidence effectively eliminating any ability for Plaintiff to contest the false allegations against her.

112. As a probation officer for MDOC, Defendant MDOC is liable to Plaintiff for acts of its agents.

113. Defendants, individually and jointly, denied Plaintiff due process rights

114. As a direct and proximate cause of the foregoing, Plaintiff has not been given any access to or contact with her children since June 2021, despite Plaintiff being a successful, law-abiding citizen.

115. Had Plaintiff not been hired by Burl Cain, the Commission of MDOC as his government affairs coordinator, in 2022, Plaintiff would never have discovered the evidence that proves the Defendants conspired with one another to deprive Plaintiff of her constitutional rights.

116. Defendant King, Defendant Rankin County and Defendant MDOC are liable to Plaintiff for damages she has suffered as a result of the forgoing acts, including but not limited to:

   a. Violation of Plaintiff's constitutional rights

   b. Mental and emotional trauma

   c. Loss of enjoyment of life

   d. Loss of parental rights

   e. Punitive Damages

   f. All other damages recoverable under the laws of the State of Mississippi.

## COUNT III

## CIVIL CONSPIRACY

117. The allegations contained in the preceding paragraphs are incorporated herein by reference verbatim.

118. A civil conspiracy is an agreement between two or more parties to commit an unlawful or wrongful act that harms a third party, which then requires an overt act in furtherance of the plan, resulting in damages for the victim.

119. To succeed in a civil conspiracy lawsuit, a plaintiff must prove the existence of the agreement, an overt act taken by one or more conspirators, and resulting injury or damages, such as financial loss or reputational harm, stemming from the conspirators' actions.

120. Defendant King, Defendant Rankin County and Defendant Mississippi Department of Corrections, by and through its agents and employees conspired with another to submit false

evidence against Plaintiff to violate Plaintiffs constitutional rights and to alienate Plaintiff from her children.

121. Plaintiff will show that Defendant King conspired with Defendant Rankin County to have Plaintiff arrested, as a favor for Brain Bailey, the Sheriff of Rankin County, and his wife, Kristy Shanks, close friends to Plaintiff's ex-husband, J.B. Bowering, and his immediate family, including Christie Freeman and Nicole Bowering.

122. Defendants participated in the falsification of evidence, false arrest, and violation of Plaintiff's constitutional rights.

123. Defendant Tamala King testified under oath as a probation officer in Rankin County for MDOC, and as a field officer, and violated her oath of office by making false statements that she knew to be false, and that Defendant Rankin County knew would be considered evidence to keep Plaintiff from having contact with her children.

124. Defendant King and Defendant Rankin County knew that Plaintiff had not tested positive for fentanyl, because there was no test at the time that screened for fentanyl.

125. Because defendant's actions were done during the course and scope of her employment as an agent of the Rankin County Probation Office of the Mississippi Department of Corrections, Defendant Rankin County and Defendant Mississippi Department of Corrections are thereby principal and liable to Plaintiff for Defendant King and Defendant Rankin County's actions.

126. Plaintiff will show that the Defendants, individually and jointly, represent official policy for Defendant Rankin County, Mississippi and Defendant Mississippi Department of Corrections.

127. Defendant King, Defendant Rankin County and Defendant MDOC are liable for damages Plaintiff has suffered pursuant to 42 U.S.C.A. § 1983.

128. Defendant King, Defendant Rankin County and Defendant MDOC are liable to Plaintiff for damages she has suffered as a result of the forgoing acts, including but not limited to:

   a. Violation of Plaintiff's constitutional rights
   b. Mental and emotional trauma
   c. Loss of enjoyment of life
   d. Loss of parental rights
   e. Punitive Damages
   f. All other damages recoverable under the laws of the State of Mississippi and the United States Constitution.

## DAMAGES

129. As a result of the defendants' actions described in this complaint, the plaintiff suffered considerable damage, including the loss of contact with her minor children, defamation of character, slander of Plaintiff's reputation.

130. The conduct of Defendants deprived Plaintiff of the following rights, privileges and immunities secured to her by the Constitution of the United States:

   A. The right of Plaintiffs to be secure in her person and effects against unreasonable search and seizure under the Fourth and Fourteenth Amendments to the Constitution of the United States (Art. IV, U.S. Constitution, Amend XIV, U.S. Constitution).

   B. The right of Plaintiff to be informed of the nature and cause of the accusation against her, secured to her under the Sixth and Fourteenth Amendments to the Constitution of the United States (Art. VI, U.S. Constitution, Amend XIV, U.S. Constitution); and

    C. The right of Plaintiffs not to be deprived of life, liberty, or property without due process of law, and the right to the equal protection of the laws, secured by the Fourteenth Amendment to the Constitution of the United States (Amend XIV, U.S. Constitution).

131. The acts of Defendants King, MDOC and Rankin County were performed knowingly, intentionally, and maliciously, and therefore Plaintiff is entitled to an award of punitive damages.

132. Mississippi Department of Corrections and Rankin County, Mississippi, who are vicariously liable for the acts and/or omissions of its employees, agents, and servants, violation of Plaintiff's constitutional rights. The incident and resulting damages complained of herein were directly and proximately caused by the deliberate disregard of Plaintiff's rights and privileges, in their failure to exercise a proper degree of care in the following respects:

    (a) False arrest and abuse of process;

    (b) Violations of Fourth, Fifth and Fourteenth Amendment of the U.S. Constitution;

    (c) Failing to properly train and supervise its employees;

    (d) Failing to use ordinary care; and

    (e) By other acts of negligence as will be shown at the trial of this cause.

133. The intentional acts and deliberate disregard acts and omissions of the responsible parties were the proximate cause of the personal injuries and other damages sustained by Plaintiff. Plaintiff has sustained tremendous damages as a result, including but not limited to the following:

    a) Past and Future Medical expenses;

    b) Pain and suffering;

    c) Mental and emotional trauma;

    d) Loss of enjoyment of life;

e) Punitive damages under federal law; and

f) All other damages recoverable under the laws of the State of Mississippi and the United States.

134. This type of damage is the result of willful and wanton abuse of power by Defendants, in reckless disregard for the rights for the Plaintiff's privileges and immunities, and while acting under color of state authority.

## **RELIEF**

141. In light of the foregoing, the plaintiff requests the relief:

a) compensatory damages from the defendants, in the amount of $500,000.00, each ;

b) punitive damages from the defendants, in the amount of 15,000,000.00; and

e) Such other relief to which the plaintiff is entitled.

STEPHANIE NOWLIN, Plaintiff

Date: August 29, 2025

By: *Megan S. Thornton*
    Attorney for Plaintiff

Megan Thornton (SBN: 104104)
Stuard Thornton Law Firm
124 Main Avenue N.
Magee, MS 39111
Phone: 601-207-3434
megan@stuardthornton.com
Attorney for Stephanie Nowlin